UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DERRICK ALLEN | * | NUMBER: 14-506-JWD-RLB |
| | * | |
| VERSUS | * | |
| | * | JUDGE: J. DEGRAVELLES |
| | * | |
| ENVIROGREEN LANDSCAPE | * | |
| PROFESSIONALS, INC. | * | MAG: R. BOURGEOIS |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of Envirogreen Landscape Professionals, Inc. ("Envirogreen") in support of its motion seeking the dismissal of the claims set forth in the "Attempt to File a Complaint in Federal Court" filed by Derrick Allen ("Plaintiff" or "Allen") (hereinafter referred to as the "Complaint") on the grounds that Allen is unable to establish the prima facie elements of his claim of retaliation under Title VII of the Civil Rights Act or La. R.S. 23:301, et seq. and thus Envirogreen is entitled to summary judgment in its favor as a matter of law.

### I.    UNDISPUTED ISSUES OF MATERIAL FACT

Allen was hired by and began working for Envirogreen on or around September 17, 2010. (Exhibit A, p. 29-31) Allen interviewed with Mark Willie, the owner of Envirogreen, and Todd Griffin, a landscape architect with Envirogreen, for a supervisory position. (Ex. A, p. 27-28) Allen contends that during his three months of employment with Envirogreen there was confusion as to his rate of pay. (Ex. A, p. 38–39) Allen contends that he understood there was

an agreement to pay him $15 an hour but instead he was paid $14 an hour. (Ex. A, p. 29-30) Allen was not aware of what other employees were being paid. (Ex. A, p. 35). Allen further contends that he was supposed to, but never did, receive a written employment agreement. (Ex. A, p. 38)

Allen claims that he verbally expressed his concerns regarding his pay and the lack of written agreement to Envirogreen. (Ex. A, p. 29) Allen also alleges that once he began working, he verbally complained to a supervisor that he was not being paid the overtime pay to which he believed he was entitled. (Ex. A, p. 40) Allen contends that after he complained about his lack of written agreement, pay rate and Envirogreen's failure to pay him overtime, Envirogreen retaliated against him by, requiring him to finish jobs on two or three occasions that other employees had started—making it difficult for him to understand what was required to finish the projects and then ultimately terminated him. (Ex. A, p. 40–43) Envirogreen terminated Allen because of poor job performance and because it determined he did not have the skills that Envirogreen believed he had upon hire. (Ex. A., Separation Notice (Ex. 3))

Allen filed charges with the Louisiana Commission on Human Rights and the EEOC, which found that the evidence did not support Allen's allegations of employment discrimination based on his race. (Ex. A, Charge of Discrimination (Ex. 6) and Dismissal and Notice of Rights (Ex. 7)) Further, following his termination, on or about May 2011, Allen filed a complaint with the U.S. Department of Labor ("DOL") about the failure of Envirogreen to properly pay overtime. (Ex. A, FOIA Response (Ex. 4)) The DOL investigated and determined that Plaintiff was entitled to overtime pay from Envirogreen in the amount of $933.82. (Ex. A, FOIA

2

Response (Ex. 4)) Envirogreen remitted the back overtime wages owed to Plaintiff on or around November 1, 2011. (Ex. A, May letter (Ex. 5))

Assuming only for purposes of this motion that the aforementioned facts are true, Allen does not assert that during his employment with Envirogreen that he complained of unlawful activities under Title VII. Instead, when Allen is alleging he complained to Envirogreen about "discriminatory employment practices," he refers only to complaints about his own pay and contract issues – which issues do not fall within the ambit of Title VII. (Ex. A, p. 54) Allen's claims relate only to the fact that he allegedly complained about not having a written employment contract, not being paid overtime, and having his salary set at a dollar less than he believed he was promised — not because of any protected activity under Title VII. (Ex. A, p. 54-55)

## II. LAW AND ARGUMENT

To establish a prima facie case for retaliation under Title VII, Allen must show that: (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Turner v. Jackson State University*, 2015 WL 6774033 (5th Cir. 2015); *Willis v. Napolitano*, 986 F.Supp.2d 738, 747 (M.D. La. 2013). An employee engages in a protected activity if he opposes any practice made an unlawful employment practice under Title VII. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337 (5th Cir. 2007). If Allen were to succeed in establishing a prima facie case, the burden would then shift to Envirogreen to demonstrate a legitimate, non-retaliatory purpose for the employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) Allen then must establish that the reason

provided by Envirogreen was pretext for retaliation *Id*. The Supreme Court recently held that a plaintiff alleging retaliation must establish that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2534 (2013). Allen cannot meet his burden under this framework, accordingly his claim must be dismissed as a matter of law.

### A.   Plaintiff Did Not Engage in an Activity Protected by Title VII.

The anti-retaliation provision of Title VII explains that it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3. An "unlawful employment practice" is defined as including "fail[ing] or refus[ing] to hire or to discharge any individual . . . because of such individual's *race, color, religion, sex, or national origin.*" 42 U.S.C. § 2000e-2 (emphasis added). Clearly, Plaintiff fails to meet his obligation to show a prima facie case of retaliation because he has not even alleged (much less proven) that he engaged in an activity protected under Title VII.

In Plaintiff's Complaint, he alleges that Envirogreen retaliated against him for complaining about Envirogreen's employment practices, namely his own "wages paid, hours of work, and working conditions." (Doc. #1, p. 1) At his deposition, Allen testified that it was his complaining about <u>his</u> wages, and a breach of what he believed to be the agreement between himself and Defendant, that led to his termination, not any right protected under Title VII. Allen testified:

> Q. Do you feel like, had you not complained about the wages, would they have terminated you?
>
> A.: I don't think they would have.

4

….

Q. In your case you felt they terminated you for retaliation, not race.

A.: Right.

Q. And that retaliation was because you had complained about the wages.

A.: Right.

(Ex. A, p. 46–47) Allen further testified that he believed that Envirogreen retaliated against him because Mark Willie was "greedy":

Q. Why did you think [Willie] was taking that position?

A.: Well, let's look at it like this, if I come to you and say, you're not paying overtime and you been doing this for a while, right, and it's saving you money and someone points that out, that would be a problem. And then if I'm asking you for an agreement and you never produced that agreement and then you give me a dollar under what you told me you were going to give me and I come to you about that, each time I feel something is wrong I'm coming to you, you know, that's like a pest or a problem.

Q. Did you think they were doing these things because of your race?

A.: I think mostly he was doing it because he was greedy.

(Ex. A, p. 43) Thus, at no time has Plaintiff alleged that an adverse action was taken against him because of any activity protected by Title VII, namely making any complaints concerning race, color, religion, sex or national origin. Instead, he complains that he was retaliated against because he complained about his wages, lack of overtime pay and failure to provide him with a written employment agreement.

Simply put, complaining about wages is not an activity protected under Title VII. *See Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608, 616 (W.D. Tex. 2005) (holding that a wage claim is not a protected activity under Title VII). "[A] vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected

5

activity." *Davis v. Dall. Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir. 2011). Thus, the record evidence clearly establish that Plaintiff's claim is that he was retaliated against because he complained about what he believes was Envirogreen's breach of a verbal agreement regarding his rate of pay and the failure to pay overtime. Nowhere has Plaintiff alleged that adverse action was taken against him because he engaged in protected activity relating to his race or other protected category. Accordingly, Plaintiff does not allege (and certainly does not prove) a prima facie case of retaliation under Title VII.

### B. Plaintiff Cannot Establish Pretext or "But For" Causation.

The record shows that Envirogreen had a legitimate, non- discriminatory justification for terminating Plaintiff. Envirogreen terminated Plaintiff because his job performance was poor and in its judgment, he did not have the skills that Envirogreen originally believed he had at the time of hire. (Ex. A, Separation Notice Alleging Disqualification (Ex. 3)) Plaintiff contends that he was hired to be a supervisor (Ex. A, p. 28). However, he contends that after he complained, the employer retaliated by placing him in "inappropriate working conditions", which he described as being sent to oversee the completion of several projects that he did not start (Ex. A, p. 40-41). It would seem that a "supervisor" should have the skills to direct the completion of a project, regardless of when he is assigned to the job. It was the inability of the plaintiff to perform in situations which required some degree of supervisory skills (as well as other performance issues) that led to the decision by Envirogreen to terminate his services. Since the plaintiff has acknowledged that he did not have the ability to properly complete a job unless he started the project, he cannot demonstrate that the reason given for his termination (poor performance, i.e. lack of supervising ability) was a pretext.

6

"[O]nce the employer offers a legitimate, non-discriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *McCoy* at 562. Plaintiff's unsubstantiated testimony, much less his testimony that he believes he was terminated for non-Title VII protected reason (i.e. greed) certainly does not satisfy his requirement to show pretext. As a result, there is no genuine issue of material fact as to whether any Title VII protected activity was the "but-for" cause of his termination and summary judgment should be granted.

## IV. CONCLUSION

Plaintiff filed this suit seeking damages for Title VII retaliation after allegedly complaining to Envirogreen about the terms of payment under his alleged verbal employment contract. The law clearly provides that protected activities under Title VII are limited to race, color, religion, sex, or national origin not individual wage disputes. The same persons who hired Mr. Allen three months prior to his termination made the decision to terminate his employment. Those same actors knew his race when they hired him and he candidly admits in his deposition that he was not fired due to his race. At no time has Plaintiff alleged that he engaged in a protected activity under Title VII, and any other claim that Plaintiff might have had for retaliation under any other law has long since prescribed. Accordingly, Envirogreen prays that its Motion for Summary Judgment be granted and Plaintiff's suit dismissed at his cost.

By Attorneys,

KANTROW, SPAHT, WEAVER & BLITZER
(A PROFESSIONAL LAW CORPORATION)
445 North Boulevard, Suite 300 (70802)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703
Facsimile: (225) 343-0630

By: __/s/ John C. Miller_____
    John C. Miller, #9490
    Jennifer A. Hataway, #26323
    *Attorneys for Defendants, Envirogreen*
    *Landscape Professionals, Inc.*

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion for Summary Judgment has been served on Derrick Allen, P.O. Box 423, Baker, Louisiana 70704 by placing same in the United States mail, postage prepaid and properly addressed and/or by facsimile and/or by PACER notice, this 13th day of November, 2015.

    _/s/ Jennifer A. Hataway_
    Jennifer A. Hataway

#329554v6

8