UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DERRICK ALLEN | CIVIL ACTION |
| v. | NO. 14-506-JWD-RLB |
| ENVIROGREEN LANDSCAPE PROFESSIONALS, INC. | |

### RULING AND ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 11) filed by Defendant Envirogreen Landscape Professionals, Inc. ("Envirogreen" or "Defendant"). Plaintiff Derrick Allen ("Plaintiff" or "Allen") opposes the motion. (Doc. 13.)  Oral argument is not necessary.  Having carefully considered the law, facts in the record, and arguments of the parties, Defendant's motion is granted.  Plaintiff has failed to show that he engaged in activity protected under Title VII.  As a result, he has failed to demonstrate a prima facie case of retaliation.  Accordingly, Plaintiff's claim is dismissed with prejudice.

**I.     Relevant Factual Background**

Plaintiff is an African-American male.  Defendant is a company that provided landscaping services in Baton Rouge, Slidell, and other places. (*See* Doc. 11-1 at 6.)

Plaintiff was hired by Defendant on September 17, 2010. (*Id.* at 5.)  Plaintiff interviewed with Mark Willie, the owner, and Todd Griffin, a landscape architect. (*Id.* at 2.)  Plaintiff was hired by Defendant to "supervise the guys," and his title was supervisor. (*Id.* at 3.)  Plaintiff testified that he and Willie were supposed to get together and go over an employment agreement, his exact duties, and the term of his employment, but Willie "continued to put that off for whatever reason." (*Id.* at 3-4.) According to Plaintiff, "[t]he only thing we talked about was me supervising, and then we said, okay, can we put that on paper, and Mark was in agreement with

putting it on paper but never produced it." (*Id.* at 4.) Plaintiff claims no one explained to him what his job duties were, and it was never put on paper. (*Id.* at 5.) Plaintiff submits Defendant's responses to requests for production, wherein Defendant's state "there is no written document entitled 'Employment Agreement' between Defendant and Plaintiff." (Doc. 13-1 at 2.)

After Plaintiff started working, he would report to Defendant's office, and then he would be sent to jobs to do landscaping around buildings, houses, day cares, or "whatever contract they [were] able to get." (Doc. 11-1 at 6). At the jobs, Plaintiff "was doing pretty much a little bit of everything, not just – little to none if so [sic] supervising but mainly just routine labor." (*Id.*) Plaintiff ran the trencher, the Bobcat, and the augur. (*Id.* at 7.)

With respect to compensation, Plaintiff claims that Willie said Plaintiff would make $15 per hour, but, when Plaintiff received his first check, it was $14. (*Id.* at 5.) When this happened, Plaintiff talked to Griffin and then Willie. (*Id.*) Plaintiff claims that Defendant violated a "salary agreement" – that is, the above agreement for $15 per hour that was never put into writing. (*Id.* at 8.) When that arose, Plaintiff went to Willie and was told "we're going to see about it, we're going to see about it." (*Id.* at 9.) Plaintiff also made a verbal complaint about a lack of overtime. (*Id.* at 10.)

Plaintiff claims that, after the complaint, Defendant retaliated against him by placing him in inappropriate working conditions. (*Id.* at 10.) Plaintiff testified:

> for instance, they would go out and start something, like they sent me and another guy to Slidell to finish a job that someone else had started that I wasn't familiar with, like setting you up to fail. But I went out there and had to do a demonstration on the clock that I didn't set up. So I did it and I came back and from that point on it was just like they were trying to make up stuff, you know, to just give me. But it was never a write-up, there was never a complaint from the people I was working for, it was never none of that. So it just popped up all of a sudden, he said I have to release you. For what, what have I done? What's going wrong?

2

(*Id.* at 11.) Plaintiff then confirmed that one of the inappropriate working conditions was "sending [him] out to a job that [he wasn't] familiar with and having [him] check things that [he] had not done personally." Plaintiff stated "That's one. That's a set up. You know, if you go on a job, you don't want to go behind someone else and do their work." (*Id.*) Plaintiff admitted he was a supervisor, but he stated that, though he was supposed to oversee and check what people did, that only applies to "something that you initiate. (*Id.* at 12.) As a project manager or anything like that, you don't take off where somebody left off unless they've given you the information to read over, to get an understanding of what's going on with that project." (*Id.*) Plaintiff did between six and eight jobs for Defendant, and he stated that, since his conversation with Willie, all of them were inappropriate working conditions, though he initially said it was only two to three such jobs. (*Id.* at 12-13.)

Griffin told Plaintiff that he was being terminated. (*Id.* at 15.) Griffin stated that Willie wanted to let him go. (*Id.*) Griffin handed Plaintiff a piece of paper and showed him what was on it. (*Id.*) Both parties submit an unauthenticated document entitled "Separation Notice Alleging Disqualification" (Doc. 11-1 at 18; Doc. 13-2 at 1) that appears to be the termination letter. The notice states that Plaintiff was discharged (i.e., fired), and the explanation listed is, "not working out", "job performance poor", and "did not have skills ordinarily agreed upon." (*Id.*)

Plaintiff also testified as to the motive behind Defendant's action:

Q:   Why did you think he was taking that position?

A:   Well, let's look at it like this, if I come to you and say, you're not paying overtime and you been doing this for a while, right, and it's saving you money and someone points that out, that would be a problem. And then if I'm asking you for an agreement and you never produced that agreement and then you give me a dollar under what you told me you were going to

3

>           give me and I come to you about that, each time I feel something is wrong
>           I'm coming to you, you know, that's like a pest or a problem.
>
> Q:       Did you think they were doing these things because of your race?
>
> A:       I think mostly he was doing it because he was greedy.

(*Id.* at 13.) Plaintiff later testified:

> Q:       Do you feel like, had you not complained about the wages, would they have
>           terminated you?
>
> A:       I don't think they would have.
>
> Q:       So being black had nothing to do with it.
>
> A:       Well, you can say so, either way. It had something to do with it to the point
>           where everyone out there was in the field on a constant basis, that when I was
>           there, was black. Now, in my case, once again, on retaliation, not race.
>
> Q:       In your case you felt they terminated you for retaliation, not race.
>
> A:       Right.
>
> Q:       And that retaliation was because you had complained about the wages.
>
> A:       Right.

(*Id.* at 14-15.) Plaintiff further stated:

> Q:       And in your complaint back to your termination, you stated that you were
>           terminated because you complained about discriminatory employment practices.
>           And that was the manner in which you were being paid.
>
> A:       Correct.
>
> Q:       And were those practices related to your race? You already said that you didn't
>           think it was related to your race.
>
> A:       Once again, I'll say all the blacks was working on this level and the whites, but
>           my reason I think it was retaliation because I complained.

(*Id.* at 16.)

4

On May 27, 2011, Plaintiff filed his EEOC Charge of Discrimination. (Doc. 11-1 at 17, 26). Plaintiff claimed discrimination based on race and retaliation. (*Id.* at 26) Plaintiff claimed:

> I began my employment with the Respondent on September 17, 2010, as a Landscape and Irrigation Supervisor. The Respondent employs over 500 employees. On December 31, 2010, I was terminated.
>
> On September 27, 2010 and December 13, 2010, I complained to Mark Willie, Owner regarding being paid at a[n] incorrect pay rate but nothing was done to correct my pay rate. On December 31, 2010, Todd Griffin, White Supervisor, [sic] I was terminated due to the job not working out, poor job performance, and not possessing the skills originally agreed upon.
>
> I believe I have been discriminated against based on race, black and retaliation in violation of LSA R.S. 23:301 et seq and Title VII of the Civil Rights Act of 1964, as amended respectfully.

(*Id.*)

With his surreply, Plaintiff also submits an unsworn, unauthenticated document that appears to provide a narrative of his complaints against the Defendant. (Doc. 17-1 at 4.) In the document, Plaintiff claims he is treated differently than a white employee named Rick with respect to job assignments training, wages and hours. (*Id.*) No details are given about Rick, other than that he is white. (*Id.*) Defendant further claims that he was fired because of his race. In the document, Plaintiff explains how, after he got $14.00 on his first pay check, he "felt violated by Envirogreen, so he brought it to their attention." (*Id.*) The document states that "Allen was subsequently fired, and Griffen stated during their debriefing that it was apparent Allen was not satisfied with the way things were going on the job and he could find another job with no problem." (*Id.* at 5.) The document further states:

> The complainant informed his employer of his opposition to their practices because the practices were unlawful. Envirogreen hired Derrick Allen as a supervisor and he was not render [sic] the opportunities and training that was agreed upon, he did not get paid the agreed upon wage of $15 an hour, and he

5

worked over 40 hours a week on several occasions and did not get paid overtime wages because of his Race, and he was assigned revolting assignments and fired because of his race and opposition to his employer's unlawful practices.

(*Id.* at 5.)

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 , 586—587, 106 S.Ct. 1348 , 89 L.Ed.2d 538 [*2] (1986) (internal citations omitted). The nonmover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp*., 37 F.3d 1069 , 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co*., 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257 , 1263 (5th Cir.1991).

## III. Discussion

### A. Parties Arguments

Defendant makes two main arguments. First, Defendant contends that Plaintiff cannot establish a prima facie case of retaliation because he did not engage in protected activity;

6

Plaintiff complained only about his pay, which is not within the ambit of Title VII. Second, Defendant argues that, even if Plaintiff established a prima facie case, Defendant has shown legitimate, non-discriminatory reasons for the termination, including poor performance and not possessing the skills originally agreed upon. The burden thus shift backs to the Plaintiff to show pretext, and, according to Defendant, Plaintiff cannot do so. He cannot prove that race was the "but for" cause of his termination.

Plaintiff responds in his briefs that he was retaliated against after complaining about his pay. Plaintiff argues in his opposition that "plaintiff's race was a precursor to their retaliation because the plaintiff's opposed their misconduct based on Title VII." (Doc. 13 at 2.) In his surreply, Plaintiff asserts more directly that he was paid less "because of race (black) and it would not have happened otherwise." (Doc. 17 at 2.)

Moreover, Plaintiff contests that Defendant had a legitimate, non-discriminatory reason for terminating him; Defendant asserts that Plaintiff did not have the skills originally agreed upon, but there was no employment agreement laying out what skills were exactly required. Additionally, Defendant claims Plaintiff had poor performance, but there is no evidence of write ups.

Finally, Plaintiff asserts he was retaliated against because of his race. Plaintiff states the retaliation was "on the grounds of retaliation (reprisal) and not on the grounds of race. However, race was a component." (Doc. 13 at 3.)

### B. Analysis

The Court grants the Defendant's motion. No reasonable juror could conclude from the uncontested facts that the Plaintiff engaged in protected activity. Accordingly, summary judgment is appropriate on this basis alone, and the Court need not reach the other issues.

To establish a prima facie case of retaliation under Title VII, the plaintiff must prove, among other things, that he "participated in an activity protected under the statute." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir.2007)). "An employee has engaged in activity protected by Title VII if []he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII.' " *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 492 (5th Cir. 2011) (per curiam) (citations omitted). "Thus, Title VII prohibits retaliation in instances of either protected opposition or protected participation." *Alack v. Beau Rivage Resorts, Inc.*, 286 F. Supp. 2d 771, 774 (S.D. Miss. 2003).

Here, only protected opposition is at issue. For this, the Plaintiff must prove that, at the time he made his complaint, he was engaged in conduct that was in opposition to one of Defendant's employment practices that was unlawful under Title VII, or which he reasonably believed to be unlawful under Title VII. *Id.* (citation omitted).

An "unlawful employment practice" under Title VII includes "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's race, color, religion, sex, or national origin*." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). "Thus, if the conduct complained of by the plaintiff had nothing to do with race, color, religion, sex, or national origin, a retaliation claim cannot be maintained under Title VII." *Bartz v. Mitchell Ctr.*, No. A-05-CA-959-LY, 2008 WL 577388, at *2 (W.D. Tex. Jan. 23, 2008), *report and recommendation adopted,* (Feb. 27, 2008) (holding that Plaintiff's complaint regarding her employer's failure to provide sufficient special education services to their students

8

did "not oppose any practices made unlawful under Title VII (such as race or sex discrimination), and thus is not 'protected activity' under Title VII").

Moreover, an employee's complaints do not constitute protected activity when they are based on salary or wages and when they are unrelated to discrimination against a protected group. *See Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 616 (W.D. Tex. 2005) (finding that plaintiff had no claim for retaliation under Title VII when he complained to the Department of Labor about not receiving overtime pay and later filed a Wage Claim with the Texas Workforce Commission about overtime benefits and his salary; "Plaintiff confuses retaliation claims under Title VII and under the FLSA. A retaliation claim under Title VII requires that a plaintiff engage in activity protected by Title VII. Plaintiff's response points only to his action with regard to his overtime claim. . . as protected activity. This activity is protected under the FLSA, not Title VII."); *Callahan v. Bancorpsouth Ins. Servs. of Mississippi, Inc.*, 244 F. Supp. 2d 678, 684-85 (S.D. Miss. 2002), *aff'd sub nom. Callahan v. Bancorpsouth Ins.*, 61 F. App'x 121 (5th Cir. 2003) (finding, where plaintiff complained about the denial of a bonus and requested an hourly wage so she would be eligible for overtime, that summary judgment was appropriate because "[n]owhere in her deposition testimony or brief does she allege that she complained specifically about gender-based discrimination, except for [one] cryptic remark," and a reasonable person in the vice-president's position would not have "understood that plaintiff was threatening a gender-based discrimination lawsuit."); *Jones v. New York City Health & Hosp. Corp.*, No. 00 CIV. 7002, 2003 WL 30412, at *4 (S.D.N.Y. Jan. 3, 2003), *aff'd sub nom. Jones v. New York City Health & Hosps. Corp.*, 102 F. App'x 223 (2d Cir. 2004) (granting summary judgment on retaliation claim because, while Plaintiff complained about her salary

9

numerous times, there was no issue of fact concerning whether Defendants were aware, prior to terminating plaintiff, that she had complained of discrimination.").

Additionally, the Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis*, 448 F. App'x at 492 (finding that district court properly concluded that a complaint of a "hostile work environment" did not constitute protected activity within the meaning of Title VII because "this complaint lacked a racial or gender basis"); *See also Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (affirming district court's finding that plaintiff failed to show that she engaged in protected activity under Title VII because, while Plaintiff complained of unfair treatment, she did not demonstrate that she put the employer on notice that her complaint was based on racial or sexual discrimination); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 396 (5th Cir. 2008) (per curiam) (finding no error in the granting of summary judgment when plaintiff complained of unfair treatment but "never referred to the discriminatory treatment as age-based"); *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (finding, when plaintiff argued he was retaliated against for filing a grievance, that district court correctly granted summary judgment because plaintiff did "not engage in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII.  Rather, [plaintiff] simply complained that [defendant] had violated its agreement with the union.  [Plaintiff's] grievance . . . made no mention of race discrimination. . .").

Here, Plaintiff has failed to create a genuine issue of fact that he opposed a practice made unlawful by Title VII.  First, Plaintiff testified that he complained about Defendant violating a

10

"salary agreement" and about a lack of overtime (Doc. 11-5 at 8, 10.)  There is no evidence in the record that, when Plaintiff made this complaint, he did so on the basis of race.

Second, no reasonable juror could conclude that Defendant's failure to pay Plaintiff the right wage was unlawful under Title VII.  Plaintiff testified.

> Q:   And in your complaint back to your termination, you stated that you were terminated because you complained about discriminatory employment practices.  And that was the manner in which you were being paid.
>
> A:   Correct.
>
> Q:   And were those practices related to your race? You already said that you didn't think it was related to your race.
>
> A:   Once again, I'll say all the blacks was working on this level and the whites, but my reason I think it was retaliation because I complained.

(*Id.* at 16.)  Plaintiff's testimony that "all the blacks was working on this level" refers to earlier testimony in which he was asked if being African-American had anything to do with his termination, and Plaintiff responded that "[i]t had something to do with it to the point where everyone out there was in the field on a constant basis, that when I was there, was black." (*Id.* at 14-15.)  Taking both of these statements together, and even construing them in a light most favorable to the Plaintiff, a reasonable juror simply could not conclude that Defendant discriminated against Plaintiff solely from the fact that Defendant had only African-American employees as laborers.

Third, there is no evidence in the record that Plaintiff reasonably believed that Defendant's conduct violated Title VII.  Again, the fact that Defendant employed mostly or even all African-American employees as laborers is not a reasonable basis for believing that Title VII was violated.  Moreover, a lack of reasonable belief is demonstrated indirectly by Plaintiff's testimony regarding why Defendant retaliated against him.  Plaintiff was specifically asked if

11

Defendant was reatliating "because of [his] race," and he testified, "I think mostly [Willie] was doing it because he was greedy." (Doc. 11-15 at 13.)  Finally, Plaintiff specifically stated twice in his deposition that he was terminated "for retaliation, not race."

Even the Plaintiff's "strongest" piece of evidence – the narrative complaint submitted with Plaintiff's surreply – does not save the Plaintiff.  First, the document is unsworn and unauthenticated.  As this Court stated in *Hall v. Johnson,* No. CIV.A. 12–00099–BAJ, 2013 WL 870230 (M.D.La. Mar. 7, 2013).

> To be considered by the court, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'... A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542 (9th Cir.1989). *See also Martin v. John W. Stone Oil Distributor, Inc.,* 819 F.2d 547 (5th Cir.1987) ( "Unsworn documents are ... not appropriate for consideration [on motion for summary judgment]"); *Moffett v. Jones County,* 2009 WL 1515119 (S.D. Miss., June 1, 2009) ("The records are not certified ... nor sworn in any way, thus they are inadmissible"); *Rizzuto v. Allstate Ins. Co.,* 2009 WL 1158677 (E.D. La., April 27, 2009) (same); 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2722 (3rd ed.1998).

*Id.* at *1 n. 1.  Thus, this document is inadmissible.

Second, even the Court were to consider the document, this document does not demonstrate the above burden.  The closest Plaintiff comes are the following stream-of-conscious statements:

> The complainant informed his employer of his opposition to their practices because the practices were unlawful. Envirogreen hired Derrick Allen as a supervisor and he was not render [sic] the opportunities and training that was agreed upon, he did not get paid the agreed upon wage of $15 an hour, and he worked over 40 hours a week on several occasions and did not get paid overtime wages because of his Race, and he was assigned revolting assignments and fired because of his race and opposition to his employer's unlawful practices.

(Doc. 17-1 at 5.)

12

But this "testimony" does not establish that the Plaintiff engaged in protected activity. First, even if these statements had been in affidavit form, the declaration that Defendant acted "because of his Race" is, at best, conclusory and thus cannot defeat summary judgment. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citing *Broadway v. City of Montgomery*, 560 F.2d 657, 660 (5th Cir. 1976)) ("conclusory assertions cannot be used in an affidavit on summary judgment"); *Stewart v. May Dep't Stores*, 294 F. Supp. 2d 841, 845 (M.D. La. 2003) (citations omitted) ("Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact."); 10B Charles A. Wright, *et al., Federal Practice and Procedure* § 2738 (3d ed. 2016) ("[Rule 56(c)(4)] further limits the matter to be properly included in an affidavit to facts, and the facts introduced must be alleged on personal knowledge. Thus, ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion."). Second, these assertions cannot reasonably be construed as indicating that Plaintiff told Defendant that the basis of his complaint was race-based. Thus, even construing the facts in a light most favorable to the Plaintiff, none of the above "testimony" demonstrates (1) that Defendant's employment practices were unlawful under Title VII, (2) that Plaintiff ever told Defendant that his wage complaints related to race, or (3) that Plaintiff reasonably believed that Defendant's employment practices were unlawful.

Plaintiff also submits another document dated July 1, 2011, and stating at the top "LA OFFICE OF HUMAN RIGHTS." (Doc. 17-1 at 7.) This document lists "Three Elements of Retaliation," and, under the "Protected Activity" section, Plaintiff states, "I opposed their employment practices and work assignments in comparison to Rick a white supervisor for the company." (*Id.*) But this document is also unsworn and unauthenticated; thus will not be considered. Moreover, even if it were admissible, it too is conclusory and thus does not establish

a question of fact as to any of the above three issues.

Plaintiff also makes several factual assertions in his brief about the above issues. For instance, Plaintiff states in his opposition, "Basically, Envirogreen's retaliation was an attempt to deter plaintiff from opposing their discriminatory actions or participating in an EEOC process because I plaintiff was not terminated at that point.  Subsequently, after plaintiff did not back down, but continued to oppose their discriminatory actions[,] Envirogreen terminated plaintiff." (Doc. 13 at 5.)  Plaintiff similarly says in his surreply, "defendant reneged on all his verbal agreements [about his hourly rate] which were in good faith toward plaintiff.  Plaintiff believes this occurred because of race (black) and it would not have happened otherwise.  At this juncture, plaintiff complained to the defendant (Mark Willie) about the situation." (Doc. 17 at 2.)

But, on a motion for summary judgment, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other material". Fed. R. Civ. P. 56(c). Plaintiff cannot defeat summary judgment merely by relying on unsupported factual statements in a brief. *See Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986) (citing *Sims v. Mack Truck Corp.*, 488 F.Supp. 592, 597 (E.D.Pa.1980)) ("Statements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists."); *Brunette v. Dann*, 417 F. Supp. 1382, 1386 (D. Idaho 1976) (citing Fed. R. Civ. P. 56(c)) ("On motion for summary judgment the opposing party cannot rely on bare allegations in the pleadings or briefs."). Plaintiff had the burden of "identif[ing] specific evidence in the record and articulat[ing] the manner in which that evidence support[ed] [his] claim," *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (citation omitted), and he simply failed to do so.

In sum, no reasonable juror could conclude that the Plaintiff engaged in activity protected under Title VII. As a result, Plaintiff has failed to sustain his burden of showing a prima facie case of retaliation, and Defendant is entitled to summary judgment.

### C. Request for Additional Discovery.

Finally, in his surreply, Plaintiff states:

There were several black employees working with Envirogreen that were being discriminated against because of race, but they were scared to say something about the discrimination because of the fear of retaliation. This is why plaintiff asked defendant for files on Fair Labor Law Case vs plaintiff, which they lost. By ordering Envirogreen to release the file the court can clearly see if Rick (white male) was treated different from plaintiff (black male) in regard to pay. Rick was not one of the employees that was entitled to overtime pay due to violation of Fair Labor Law Act.

(Doc. 17 at 5.) The Court finds that, under a liberal construction afforded to this pro se plaintiff, this paragraph appears to be a request for further discovery.

Under Fed. R. Civ. P. 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or to take discovery; or (3) issue any other appropriate order." Rule 56(d) "carries forward without substantial change the provisions of" Rule 56(f). Fed. R. Civ. P. 56, Advisory Committee Notes (2010); *see also* 10B Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2740 (3d ed. 2016) ("When Rule 56 was rewritten in 2010, the provisions in Rule 56(f) were moved to a new subdivision (d), without any substantial changes.")

Preliminarily, the Court notes that, "[u]nder the rule a party who seeks the protection of [this] subdivision . . . must state by affidavit the reasons why he is unable to present the necessary opposing material." 10B Charles Alan Wright, *et al.*, *Federal Practice and Procedure*

§ 2740 (3d ed. 2016).  Here, Plaintiff has failed to comply with that rule.  On this ground alone, the request for additional discovery is denied.

Nevertheless, the Court finds that, even if Plaintiff had complied with this rule, summary judgment would be appropriate.  First, if a plaintiff "has not diligently pursued discovery … []he is not entitled to relief under rule 56(f)" *Beattie v. Madison Cty. Sch. Dist*., 254 F.3d 595, 606 (5th Cir. 2001) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir.1994)).  "Even though rule 56(f) motions should be liberally granted, '[a] district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.' " *Id.* (citing *Kelly v. Syria Shell Petroleum Dev., B.V*., 213 F.3d 841, 855 (5th Cir. 2000)).

Here, suit was filed in August of 2014. (Doc. 1.)  The discovery cutoff was November 2, 2015. (Doc. 10.)  This motion for summary judgment was filed November 13, 2015. (Doc. 11.)  Plaintiff did not make this "Rule 56(d) motion" until he filed a surreply on December 28, 2015. (Doc. 16.)  Trial is now five months away.  To date, Plaintiff has still not filed a motion to reopen discovery.

Under these circumstances, the Court finds that Plaintiff has not diligently pursued discovery.  If he legitimately believed that Defendant had the file but was not producing it, he could have filed a motion to compel.  No such motion was filed.  Moreover, Plaintiff has brought forward no actual evidence of spoliation.  Nor has he brought forward much other evidence of how much discovery he conducted on this issue.[1]  Without more, the Court cannot find that he

---

[1] Indeed, the only discovery submitted by Plaintiff was the Defendant's Responses to Plaintiff's Document Requests. (Doc 13-1 at 1-4.)  Plaintiff asked for a "List of the employees effected/reimbursed by Envirogreen's labor law violation," and Defendant replied, after objecting, that "the United States Department of Labor has already provided the Plaintiff with a redacted version of its report and findings which provides him with information regarding the total amount paid by Defendant in connection with the alleged violation with regard to overtime payment." (*Id.* at 3.)  Plaintiff also requested "[f]iles on other employees and their rates of pay," to which Defendant objected by provided a list of employees employed by Defendant during the 4th Quarter of 2010.  The responses

acted diligently in seeking these documents, particularly given the fact that the discovery deadline has passed with no motion to compel filed.

But even putting this aside, it does not appear that a Rule 56(d) motion is appropriate. The Fifth Circuit has laid out the following standard when evaluating these motions:

> We review district court dispositions of Rule 56(f) motions to suspend summary judgment for abuse of discretion. *Stearns Airport Equip. v. FMC Corp.,* 170 F.3d 518, 534 (5th Cir.1999). Rule 56(f) discovery motions are "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth,* 468 F.3d 868, 871 (5th Cir.2006). The nonmovant, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *SEC v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir.1980). Rather, a request to stay summary judgment under Rule 56(f) must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *C.B. Trucking, Inc. v. Waste Management Inc.,* 137 F.3d 41, 44 (1st Cir.1998) (internal quotation marks and citations omitted). "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Access Telecom, Inc. v. MCI Telecomm. Corp.,* 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

*Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).

Here, Defendant claims that ordering Defendant to release its "files on Fair Labor Law Case vs. plaintiff," the Court can "clearly see if Rick (white male) was treated differently from plaintiff (black male) in regard to pay. Rick was not one of the employees that was entitled to overtime pay due to violation of Fair Labor Law Act." Even if this fact was true, it does not

---

were filed on November 3, 2015, so Plaintiff had 12 days to file a motion to compel to obtain more adequate responses.

show that Plaintiff specifically complained to Defendant about racial discrimination or otherwise put Defendant on notice that his complaint was race-based, as required by the above case law. That is, even with this evidence, Plaintiff has not shown he engaged in activity protected by Title VII.

In sum, Plaintiff is not entitled to a continuance to conduct further discovery.  He submitted no affidavit, he does not appear to have diligently pursued discovery, and it appears that further discovery will not create an issue of fact.  Accordingly, for the above reasons, summary judgment is warranted.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Doc. 11) filed by Defendant Envirogreen Landscape Professionals, Inc. is **GRANTED**;

**IT IS FURTHER ORDERED** that that Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**; and

**IT IS FURTHER ORDERED** that the oral argument currently scheduled for May 5, 2016, is **CANCELLED**.

Signed in Baton Rouge, Louisiana, on <u>May 3, 2016</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**